UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GENESEE SCRAP & TIN BALING CO., INC.,

                              Plaintiff,

                                                              DECISION AND ORDER

                                                              07-CV-6359L

                    v.

CITY OF ROCHESTER,

                              Defendant.
_____

      Plaintiff, Genesee Scrap & Tin Baling Co., Inc. ("Genesee"), brought this action against the City of Rochester, New York ("City"), seeking a declaration by this Court that a particular ordinance enacted by the City is unconstitutional.  On July 30, 2007, in open court, I denied Genesee's motion for a preliminary injunction, in which Genesee sought to enjoin the City from enforcing the ordinance pending a final determination on the merits of plaintiff's claims.  *See* Dkt. #11 and #12.

      Plaintiff has now moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons that follow, plaintiff's motion is denied.

## BACKGROUND

      In May 2007, the City passed Ordinance 2007-137 ("the Ordinance"), which provides in part that "[n]o Junkyard Operator, Junk Dealer, or Scrap Processor shall purchase or otherwise receive

junk from any person without first ascertaining that such junk is the property of the person offering to sell or give away.  All purchases shall be by check and the Junkyard Operator, Junk Dealer, or Scrap Processor operator shall not cash the check."  Dkt. #5-3 at 16.

Genesee, a licensed junkyard operator that runs a scrap processing business in Rochester, then brought this action, challenging the Ordinance on a number of grounds.  First, Genesee asserts that the Ordinance violates Article I, § 8, cl. 5 of the United States Constitution, which provides that "The Congress shall have Power ... To coin Money ... ."

Genesee also asserts that the Ordinance violates 31 U.S.C. § 5103, which provides that "United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts."

Genesee's argument, in a nutshell, is that because the Ordinance provides that cash may not be used for transactions within its scope, the Ordinance in effect deems cash not to be legal tender for those transactions.  Thus, Genesee argues, the Ordinance runs afoul of the provisions cited above, as well as the Supremacy Clause, U.S. Const. Art. VI, cl. 2, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... ."

Genesee also contends that the Ordinance violates state law, specifically § 2-511(2) of the New York Uniform Commercial Code ("U.C.C."), which states that "[t]ender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender ... ."  Genesee argues that by prohibiting the parties

to a transaction for the sale of junk from using cash, the Ordinance impinges upon the seller's purported right under the U.C.C. to "demand[] payment in legal tender ... ."

## DISCUSSION

In considering Genesee's arguments, I start with the fact that the Ordinance is an exercise of the City's police power, and that as such, it is entitled to a presumption of validity. *See Barnes v. Glen Theatre*, 501 U.S. 560, 569 (1991) (stating that "[t]he traditional police power of the States is defined as the authority to provide for the public health, safety, and morals"); *Bibb v. Navajo Freight Lines*, 359 U.S. 520, 529 (1959) (exercise of police power is presumed to be constitutionally valid); *Empire State Restaurant and Tavern Ass'n, Inc. v. New York State*, 360 F.Supp.2d 454, 460 (N.D.N.Y.2005) ("there is a strong presumption of validity for a statute passed pursuant to state or local police power"); *Sanitation and Recycling Industry, Inc. v. City of New York*, 928 F.Supp. 407, 412 (S.D.N.Y. 1996) (stating that parties mounting constitutional challenges to laws passed under a local government's police power "carry a heavy burden"). *See also Rosenthal v. People*, 226 U.S. 260, 269-70 (1912) (noting "the abundant right of the legislature to regulate the junk business," and stating that legislation aimed at preventing junk dealers from buying stolen metal goods "is well within the legitimate bounds of the police power of the state").

As the party challenging the Ordinance, Genesee bears the burden of demonstrating its unconstitutionality, and that burden is a heavy one. *See Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007) (governmental action taken pursuant to police

- 3 -

power "must be sustained against a constitutional challenge 'so long as it bears a rational relation to some legitimate end'") (quoting *Helton v. Hunt*, 330 F.3d 242, 246 (4th Cir.), *cert. denied*, 540 U.S. 967 (2003)); *Kutrom Corp. v. City of Center Line*, 979 F.2d 1171, 1174 (6th Cir. 1992) ("The lenient 'rational basis' standard finds its least stringent application in cases involving a governmental unit's exercise of its police powers.  The Supreme Court has stated repeatedly that an ordinance or statute directed toward economic or social welfare regulation adopted in exercise of police powers is presumptively valid, and the burden on the issue of reasonableness lies with the party challenging such an enactment") (citations omitted); *Ecogen, LLC v. Town of Italy*, 438 F.Supp.2d 149, 158 n. 5 (W.D.N.Y. 2006).

Genesee has not carried that burden.  Although the parties have not cited, nor has the Court found, any cases precisely on all fours with this one, the case law does reveal some general principles that demonstrate that the Ordinance is neither unconstitutional nor in conflict with § 5103.

In *Porter v. City of Atlanta*, 259 Ga. 526 (1989), *cert. denied*, 494 U.S. 1004 (1990), a vehicle wrecker service and its owner were convicted of violating a city ordinance making it unlawful for a wrecker service "to refuse to accept, in lieu of cash, any check which can be insured by a check approval agency ... ."  *Id.* at 529 n. 4.  On appeal, the defendants argued that the requirement that wrecker services accept checks violated Article I, § 8 of the Constitution because the ordinance thereby "attempt[ed] to legislate a change in legal tender."  *Id.* at 529.  The Supreme Court of Georgia disagreed, stating,

> This contention is without merit.  The regulation does not require appellees to accept something other than legal tender to discharge a debt.  The debt is discharged when the appellants receive payment in legal tender through a third party institution.

*Id.*

- 4 -

Similarly, in *Cade v. Montgomery County*, 83 Md.App. 419 (Ct. Spec. App.), *cert. denied*, 320 Md. 350 (1990), *cert. denied*, 498 U.S. 1085 (1991), several towing companies sought a declaration that a local ordinance, which required towing services to accept as payment for towing and storage fees personal checks or credit cards in lieu of cash, violated Article I, § 10 of the Constitution, which provides that "[n]o State shall ... make anything but gold and silver coin a tender in payment of debts ... ." Citing *Porter*, the Court of Special Appeals rejected that argument, holding that "the provision at issue represent[ed] merely an alternative manner of 'cash' payment, rather than establishing a substitute form of legal tender," and was therefore constitutional.

In so ruling, the court distinguished *Capital Grain & Feed Co. v. Federal Reserve Bank of Atlanta*, 3 F.2d 614 (N.D.Ga.), *app. dismissed*, 269 U.S. 589 (1925) (a case relied upon by Genesee in this action), in which the court held unconstitutional a state law permitting a bank, when presented with a check for payment, to pay the check by either cash or *another* check. The court in *Capital Grain* held that by giving a bank the "absolute choice of paying in cash or by check," the statute was "a plain effort to make a debt by general deposit dischargeable by something else than gold or silver coin or other medium fixed by constitutional federal authority." 3 F.2d at 616. The problem, the court explained, was that whereas "a check, as between the parties giving and receiving it, is ordinarily not payment until itself paid," the statute here purported to make the second check, upon its issuance, an actual payment rather than simply a promise to pay. *Id.* at 616-17. Thus, the court reasoned, the second check, "when presented, might itself be paid by another check and so no money ever be collectible in Alabama, or any other state where a similar law should be enacted." *Id.* at 617. In other words, the statute gave rise to the possibility of a payee never being able to actually cash a check, since each successive check could simply be "paid" by another check.

As the court in *Cade* noted, the *Capital Grain* court said that "the case would have been different" had the statute in *Capital Grain* "made the check to be given by the bank in payment of a debt only tentative and to be payment when [the check] itself was paid by lawful money."  *Cade*, 83 Md.App. at 431 (citing *Capital Grain*, 3 F.2d at 616).  Had that been the situation, the check would have been–as checks generally are–a promise to pay in legal tender, rather than a state-created (and hence unlawful) form of legal tender in itself.  *See Berry v. Hannigan*, 7 Cal.App.4th 587, 590 (Ct. App. 1992) (observing that "there is a distinction between legislation requiring the acceptance of checks or credit cards as a manner of payment, which carry a promise to pay in legal tender, from legislation establishing that checks or credit cards discharge debts upon presentation without any recourse against the payee"); *see also Nixon v. Individual Head of St. Joseph Mortg. Co.*, 615 F.Supp. 898, 900 (D.Ind. 1985) (a "check is like a promise to pay legal tender, redeemable at many banks or financial institutions"); *State v. Meek*, 127 N.W. 1023, 1028 (Iowa 1910) (referring to payment by "check or other recognized substitutes for legal tender currency").

What these cases demonstrate, then, is that checks are not legal tender in themselves, and cannot lawfully be made such by state or municipality fiat.  They may, however, be used as a substitute for legal tender, because the payee ultimately has the right to present the check to a bank and redeem it for cash in the form of United States currency.

The Ordinance at issue here does not attempt to confer legal-tender status upon checks, nor does it deem cash not to be legal tender.  All that the Ordinance does is specify the *form* in which payments for a particular category of transactions are to be made.  The buyer must pay by check, but that check is a promise of payment in legal tender, upon presentation of the check to a bank.

Although Genesee contends that there is a distinction between an ordinance directing that a business *must* accept a certain form of payment, and an ordinance providing that a business may *not* accept cash, in the context of Genesee's claims in this case that is a distinction without a difference.  The fact remains that the Ordinance does not, by its terms or effects, alter the legal-tender status of cash.  It simply provides that junk and scrap dealers, rather than paying cash outright for junk, must pay in the form of a check, which the seller of the junk can then convert into legal tender, *i.e.*, cash.  *See United States v. Kucik*, 844 F.2d 493, 495 (7th Cir. 1988) ("A cashier's check is not legal tender, ... but merely a promise to pay"); *Seidman v. Insurance Comm'r of Commonwealth of Pennsylvania*, 532 A.2d 917, 919 (Pa. Commw. Ct. 1987) (state insurance regulation providing that insurance premium payments made to agents or brokers could not be in cash, but only  "in the form of a postal money order, cashier's check, certified check, or personal check made payable to the 'Pennsylvania Automobile Insurance Plan,'" did not violate U.S. Constitution or § 5103).

The case law also makes clear that the concerns underlying the federal constitutional and statutory provisions at issue here are not implicated by the challenged Ordinance.  As the Supreme Court explained over seventy years ago,

> [t]he Constitution 'was designed to provide the same currency, having a uniform legal value in all the States.'  It was for that reason that the power to regulate the value of money was conferred upon the federal government, while the same power, as well as the power to emit bills of credit, was withdrawn from the states.  The states cannot declare what shall be money, or regulate its value.  Whatever power there is over the currency is vested in the Congress.

*Norman v. Baltimore & Ohio R.R. Co.*, 294 U.S. 240, 303 (1935) (quoting *Knox v. Lee (Legal Tender Cases)*, 79 U.S. 457, 545 (1870)).  *See also Veazie Bank v. Fenno*, 75 U.S. 533, 549 (1869)

("Having ... undertaken to provide a currency for the whole country, ... Congress has denied the quality of legal tender to foreign coins, and has provided by law against the imposition of counterfeit and base coin on the community.  To the same end, Congress may restrain, by suitable enactments, the circulation as money of any notes not issued under its own authority").

What Congress has sought to do, then, is establish and maintain a uniform national currency, an aim which is incompatible with a system in which individual states can issue their own currency, or declare things other than federally-issued money to constitute legal tender.  The Ordinance at issue here does no such thing, however.  It merely provides that payment for junk must be in the form of a check, which in turn is payable in United States currency.  Accordingly, it is neither unconstitutional nor inconsistent with § 5103.

For much the same reasons, I also find that the Ordinance does not conflict with the statement in § 2-511(2) of the U.C.C. that "[t]ender of payment is sufficient when made by any means or in any manner current in the ordinary course of business unless the seller demands payment in legal tender ... ."  Even assuming *arguendo* that Genesee is correct in its contention that this provision guarantees a seller's right to demand payment in "legal tender," the Ordinance in no way impedes upon that right.  For one thing, as explained above, a check is simply a legally recognized substitute for legal tender; the seller will receive legal tender when he cashes the check.

More to the point, however, by its terms § 2-511(2) merely provides that as between the parties to a transaction, the seller may insist upon payment in legal tender.  Even if the statute is interpreted to mean that the seller may insist upon being paid in cash (and not by check), all that the statute provides is that tender of payment will not be deemed to have occurred unless and until the seller receives cash from the buyer.  The evident focus of this section, then, is on what constitutes

- 8 -

"payment," not on the power of the state or of a municipality to regulate, in the exercise of its police

powers, the legally permissible or required form of payment for particular types of transactions.


**CONCLUSION**


Plaintiff's motion for summary judgment (Dkt. #15) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge


Dated: Rochester, New York
        June 3, 2008.